(66 App. Div. 53.)

In re HARRIGAN'S ESTATE.

McMANUS v. HARRIGAN et al.

(Supreme Court, Appellate Division, Third Department. November 19, 1901.)

NEW TRIAL—NEWLY-DISCOVERED EVIDENCE—DILIGENCE—PROBABLE EFFECT.
    Where the trial of an action against an administrator for neglecting to collect a note belonging to the estate was continued from time to time for nearly two years after it was commenced, and judgment finally rendered against the administrator on an uncontested showing that various judgments against the makers of the note had been collected after it became due, an application for a new trial, two years after rendition of judgment, on the ground that the makers of the note would testify that they were insolvent at and after the maturity of the note, and that one of them was "mainly out of the state" since a time prior to the maturity of the note, should be denied, because lack of diligence was apparent, and the evidence would be insufficient to change the result.

Appeal from order of surrogate, Albany county.

Petition by Ellen McManus, as administratrix de bonis non of Anthony McKnight, deceased, against Harvey V. T. Harrigan and another, as executors of John J. Harrigan, deceased, to compel a judicial settlement of the accounts of John J. Harrigan as administrator of the estate of Anthony McKnight. From an order opening a decree in favor of petitioner and granting a new trial (72 N. Y. Supp. 409), petitioner appeals. Reversed.

Anthony McKnight died April 14, 1889, and John J. Harrigan was appointed administrator of his estate. Harrigan died in 1893, and Harvey T. V. Harrigan and Ellen E. Harrigan duly qualified as his executors. Subsequently, in 1896, Ellen McManus was appointed administrator de bonis non of McKnight's estate. John J. Harrigan had never rendered any account of his proceedings as such administrator, and shortly after her appointment Ellen McManus commenced proceedings in the surrogate's court of Albany county against his executors to compel an accounting for the property belonging to the McKnight estate. Such proceedings resulted in a decree which was entered April 25, 1900, in which the accounts of such executors as filed by them were surcharged to the extent of $953.40 for a note which had been received by said John J. Harrigan as an asset of said McKnight, deceased, and which the surrogate held had been lost to the McKnight estate by the negligent omission of Harrigan to prosecute and collect the same. It also reduced a credit which was claimed for Harrigan, as being moneys paid out for funeral expenses, from $350.52 to $200. No appeal was taken from such decree. Subsequently, on March 11, 1901, such executors moved before said surrogate for a new trial upon such two items, upon the ground of newly-discovered evidence. The surrogate made an order opening such decree, and allowing a new trial as to both of such items, and from so much of such order as affected the item of $953.40 allowed on account of such note this appeal is taken.

Argued before PARKER, P. J., and KELLOGG, EDWARDS, SMITH, and CHASE, JJ.

John J. McManus, for appellant.
Jacob H. Clute and Edward J. Meegan, for respondents.

PARKER, P. J. The surrogate's authority to grant a new hearing for newly-discovered evidence is given by subdivision 6 of section 2481 of the Code of Civil Procedure. It is to be exercised "only in a like case, and in the same manner as a court of record and of general jurisdiction exercises the same powers." And upon an appeal this court has the same power as the surrogate, and his determination must be reviewed by this court as if an original application were made to it. See same section.

One of the elementary principles which govern applications of this kind is that the moving party must make it appear that the new evidence sought to be introduced could not, with reasonable diligence, have been obtained upon the trial. Such motions are not entertained for the purpose of aiding a careless and negligent preparation for trial.

In this case the charge against the executors was that, owing to their testator's neglect to collect when due a $600 note against William and Henry Kelley, the McKnight estate had been injured to that amount and interest. It was conceded that such testator had made no attempt to collect the note until some 18 months after it became due, although he held it at that date as an asset of such estate, and, as administrator thereof, it was his duty to act with promptness and diligence to preserve the same. Manifestly, the first question that would suggest itself to them in meeting such a charge would be whether such note became due, and during the 18 months' delay, it could have been collected had their testator made an effort to do so. In other words, were William and Henry Kelley, or either of them, pecuniarily able to pay it? On the trial the administrator de bonis non of the McKnight estate gave evidence to show that such an attempt would have been successful; that within six or eight months after the note became due several thousand dollars were collected through legal process against the Kelleys, by other parties. No evidence whatever was given by the executors against this showing. They made no excuse for the delay on their testator's part,—no effort to dispute the fact that during that 18 months of delay other creditors collected much larger demands. On such a state of facts, the decree was rendered. After the lapse of about two years they come into court, and say that they have since the trial discovered that Henry Kelley will testify that he and William Kelley were insolvent and unable to pay the note at the time of its maturity. Also that he will testify that the Ella A. Gregory judgment, which was one that was collected during the 18 months' delay, was not paid by him, and that he does not know who paid it. Also that he did not pay the Standard Varnish Works judgment that was shown upon the trial to have been then collected, but that it was paid by a third party, in whose

interest the obligation had been incurred by the Kelleys. They present the affidavit of Henry Kelley to that effect, and he also swears that "since December, 1891, he had been mainly out of the state," and that "prior to December, 1900, he was continuously out of the state for about a year." In opposition to this claim of absence, it appears that Henry Kelley was a resident of Albany, and had an office therein, and that from May, 1897, to October, 1897, Kelley was in continued attendance thereat, and that thereafter he was frequently seen upon the streets of that city, and at all times maintained his residence therein. It would seem from the evidence that William Kelley was at the time the note was given a resident of Albany. But whether he continued to be such during the pendency of this trial does not appear. It is not shown that he was not. The trial commenced on July 29, 1897, and continued from time to time until March 30, 1899.

Now, it is plain that the question of the Kelleys' solvency was one that presented itself at the very outset, and was the one upon which their testator's liability for this note principally turned. These executors could as readily have ascertained what Henry Kelley would say upon that subject during the many months that this trial was pending as they did during the two years after it closed. The absence of Henry Kelley for a year continuously prior to December, 1900, was immaterial. It was all after the trial closed. The statement that since December, 1891, he was "mainly out of the state," is so indefinite as to amount to an evasion. If he was absent all of that time up to July, 1897, it would not affect this question. On the evidence before us, we must conclude that Henry Kelley could have been easily found within the city of Albany, and the same information obtained from him during the trial as has since been obtained. It is apparent that the executors, until after the trial closed, did not make the slightest effort to ascertain from either Henry or William Kelley their financial condition during the period when their testator should have collected the note. Indeed, it would seem that they made no effort to ascertain it from any source, or else that they were utterly unable to ascertain that there was any excuse for not collecting it. They made no offer on the trial to show any. In view of this omission to do what appears to have been their plain duty during the trial, it is a late day to make this application two years after the trial.

Moreover, ought the new evidence sought to be introduced to change the result? Henry Kelley will testify that when the note became due both he and the maker were insolvent; yet the fact remains that executions on two judgments, each of $1,143.07, recovered September 30, 1890, which was within three months after the note became due, were satisfied in the following February; and that execution on a judgment for $5,212.14, recovered in December after the note became due, was satisfied in the following April. No explanation is offered as to how these executions could be collected if the judgment debtors were insolvent. The mere statement that they were insolvent, in the face of these actual collections, hardly furnishes an excuse for the testator's having delayed

collection for 18 months, while more diligent creditors were absorbing to themselves such assets as the Kelleys had. Although insolvent in the sense that they had not property sufficient to pay all their debts, it seems that a prompt and diligent effort on the part of the testator would have resulted in a collection of the note in question. I am of the opinion that the new evidence does not materially change the situation as it appeared when the trial closed.

Their testator, having this note in his possession on July 1, 1890, when it became due, as an asset of the McKnight estate, made no attempt to collect it until 18 months had elapsed. During that period other creditors, by mere process of law, so far as it appears, collected many times its amount from the makers thereof, notwithstanding the fact that they were, when it became due, actually insolvent. Such is the case which the defendants now ask to present. It is to be noticed that Harrigan, their testator, had never filed any account of his proceedings, although he had been acting administrator for more than four years, and did not die until some years after the note became due. This neglect on his part may render it more difficult to explain why he so long delayed his attempt to collect it, but it should not operate as an excuse for such neglect.

I am of the opinion that a proper case was not presented by the executors for opening this decree and granting a new trial as to the item in question, and that so much of the order as so directs should be reversed.

Order appealed from reversed, with costs. All concur.